MISSOURI PACIFIC RAILWAY COMPANY V. WILLIAM K. FOX, ADMINISTRATOR OF THE ESTATE OF AMOS THOMPSON, DECEASED.

60  531
61  350
f 61  578

60  531
62  127
62  268
62  269

FILED SEPTEMBER 19, 1900.  No. 11,112.

1. **History of Case: PRESUMPTION.** After trial, on appeal to this court, it was decided that on a certain point in the case the evidence was insufficient to prove a cause of action. The case was reversed, and a second trial had; the trial court submitting to the jury the question thus decided in the former appeal. *Held*, In the absence of a record to the contrary, that it is presumed the trial court, having the evidence in both trials before it, found a material difference existing, from which it was determined that the decision in the case on appeal did not apply to the evidence as submitted in the second trial.

2. **Res Adjudicata.** It is a settled rule in this court that a legal principle involved in the trial of a case, when once determined, becomes thereafter the law of the case, binding, not only upon the trial court, but this court as well, and will not, ordinarily, be re-examined in a subsequent review of the proceedings of an inferior court had in the further trial of the action. This rule, however, is not applicable to decisions rendered on questions of fact; in such cases, the decision as to the sufficiency of testimony on a particular feature of the case, as disclosed by the record on the first trial, is not binding in a subsequent trial, where the testimony is, or may be presumed to be, materially different, in the investigation of which a reviewing court is to be controlled by the record then before it, uninfluenced by such prior decision.

3. **Instructions.** Where several instructions to the jury in the trial of a case are requested, some of which are inconsistent with the others, and involve different theories of the case, a party submitting such instructions can not complain of the trial court in adopting one of the theories of the case, and giving the instructions applicable thereto, and refusing those which were inconsistent with the ones given.

4. **Leading Trial Court into Error.** It is a sound and salutary principle that a party can not be heard to complain of an error which he himself has been instrumental in bringing about.

5. **Instructions: JURY: PRESUMPTION.** It is presumed that a jury followed the instructions given in arriving at their verdict, and unless it affirmatively appears to the contrary, it can not be said that such instructions were disregarded.

6. ———: CONTRIBUTORY NEGLIGENCE. An instruction regarding contributory negligence may be properly refused, when it in effect states that contributory negligence would be imputed to an individual who did not exercise the greatest care and caution that an ordinarily prudent man would exercise under like circumstances, and when, grouping a number of acts together, it calls attention to facts and circumstances to be considered, of which there is no proof of negligence, and omits an important fact connected with the transaction to which it relates.

7. ———: ———. Where an instruction on contributory negligence is given, which requires a greater degree of care and caution to be exercised than is necessary as tested by the true rule, the giving of such instruction is not to the prejudice of the party alleging contributory negligence.

8. ———: TECHNICAL ERROR: WITHOUT PREJUDICE. Instruction on contributory negligence examined, and, although technically incorrect, *held* to be without prejudice.

9. Obvious Peril: DEGREE OF CAUTION: SURROUNDING CIRCUMSTANCES. Where a person is confronted with an obvious peril, he is required to exercise care and caution commensurate with the peril. This, however, is to be determined by the conduct of ordinarily prudent men, confronted by such peril under like circumstances.

10 Instructions: REPETITION. It is not necessary to give an instruction requested which involves a proposition covered by other instructions already given, since it is in the nature of a repetition.

11. Expert Witness. A person who is a yardmaster of a railroad company, having charge of switchmen and brakemen, and who has been a switchman himself, and has handled cars of all kinds, and is acquainted with the mode of construction, may be permitted to testify as an expert respecting the manner of construction of certain parts of a car involved in the controversy, and to express an opinion thereon as to what is a proper or improper construction. Such person, although not having as thorough a knowledge as an experienced car-builder or car-architect, possesses a superior knowledge regarding the subject, qualifying him to speak with reference thereto, for the purpose of aiding the jury to rightly determine the mooted question involved in the controversy.

12. ———: RULE: DISCRETION OF TRIAL COURT. The general rule as to the competency of witnesses to testify as experts rests very largely in the sound discretion of the trial court, whose rulings thereon will not be reversed unless clearly erroneous as a matter of law.

13. **Testimony: DUTY OF BRAKEMAN.** Certain testimony as to the duties of a brakeman and car inspector examined, and *held* admissible under the issues of the case.

14. **Expert Testimony.** Expert testimony may be received regarding a subject peculiarly within the knowledge and experience of those testifying, and which is not of such a character as to be within the knowledge of men of common education and experience in considering and forming an opinion upon it.

15. ———. When the question involved does not fall within the range of common experience or common knowledge, the opinions of witnesses skilled in the particular science, art or trade to which the question relates are admissible in evidence.

16. **Answer Not Responsive: MOTION TO STRIKE.** Where an answer is not responsive to the question, it should be reached by motion to strike out.

17. **Test of Admissibility.** The test of the admissibility of evidence is upon the questions asked, rather than the answers returned.

18. **Expert Witness.** Persons having several years' experience in railroading, and having knowledge as to the manner of constructing road-beds and maintaining the same, *held* to be competent to testify, and to express an opinion, as to whether the road-bed at a certain place was properly or improperly constructed.

19. **Improper Evidence: ERROR WITHOUT PREJUDICE.** Where improper evidence is received, it will be held to be without prejudice, if it appears that the jury could not have been perceptibly influenced by the improper statements received in evidence.

20. **Cross-Examination: PREDICATING ERROR: RULE.** Where questions on cross-examination are asked for the purpose of eliciting certain information in the nature of a contradiction of the testimony in chief, and ruled out on objections, and the evidence sought is afterwards established by other uncontradicted evidence, error can not be predicated on the ruling of the court regarding such cross-examination.

21. ———: ———: ———. Where a witness is asked on cross-examination concerning a certain matter, to which objection is made, and the objection sustained, and the witness is afterwards called as a witness in chief by the party cross-examining, and the same questions asked and answered, no error can be predicated on the ruling in the cross-examination of such witness.

22. ———: LATITUDE. The latitude to be given in the cross-examination rests largely in the discretion of the trial court, and should always be restricted to facts and circumstances brought out on direct examination.

23. **Predicating Error on Testimony Stricken Out.** Where evidence is admitted over objection, as to the statements of the conductor of a train made soon after the accident occurred out of which the suit grew, which was admitted as a part of the *res gestœ*, and all of said evidence was afterwards stricken out and withdrawn from the jury, error can not be predicated upon the admission of such testimony.

24. **Damages for Negligence:** VERDICT: MOTION FOR NEW TRIAL: DELAY: INTEREST. Where, in an action for damages for negligence, a verdict is returned for plaintiff, and by reason of a motion for a new trial by the defendant a delay occurs in the rendition of judgment on the verdict, it is not error to allow interest on the amount of damages as found in the verdict, from the date thereof to the date of the rendition of the judgment.

25. **Motion for New Trial.** Where different trials have been had, resulting in verdicts for plaintiff, and new trials have been denied by the trial court, the verdict and judgment in the last trial will not be overruled and set aside, unless the evidence is clearly insufficient to support them.

26. **Evidence:** VERDICT: JUDGMENT. Evidence examined, and found to be sufficient to support the verdict of the jury and the judgment rendered thereon.

ERROR to the district court for Cass county. Tried below before RAMSEY, J. *Affirmed.*

*B. P. Waggener, James W. Orr, A. N. Sullivan* and *C. S. Polk,* for plaintiff in error.

*Matthew Gering, contra.*

HOLCOMB, J.

For the third time this action is before this court for consideration, the two former opinions being reported in *Thompson v. Missouri P. R. Co.,* 51 Nebr., 527, and *Missouri P. R. Co. v. Fox,* 56 Nebr., 746. The action is founded upon the alleged negligence of the railroad company, resulting, as claimed in the petition, in the death of one Amos Thompson, a brakeman in the employ of said company, while in the performance of his duties as such. The acts of negligence pleaded as

causing or contributing to the death of Thompson are of a threefold nature. It is asserted that the deceased came to his death in an attempt to make a coupling or connection of a passenger coach to a coal car on the rear `end of a freight or accommodation train, then being made up at a station called Union, on the line of said road, and that because of the defective and negligent manner of the construction of the coupling appliances, the improper and negligent construction of a truss-rod or bolt in the end of the coal car,—it being alleged that it was permitted to protrude through the nut in which it was screwed at the end of the car to an unreasonable and unnecessary length,— and the imperfect and improper condition of the road-bed at the place of the accident, the deceased came to his death, the several acts of negligence as alleged caus-ing or contributing to his said death, without fault or negligence on his part.

In the trial first had, upon a peremptory instruction of the court, a verdict was by the jury returned for the de-fendant company. The peremptory instruction was based upon the conclusion that the evidence failed to sus-tain the allegations of the petition as to negligence on the part of the company, and was not sufficient to support a judgment in plaintiff's favor. Upon review, by error proceeding, this court in its first opinion upheld the con-clusion reached by the trial court on all points presented except as to the sufficiency of the evidence with reference to the manner of the construction of the truss-rod or bolt, and whether, if negligently constructed, it was the proxi-mate cause of the death of Thompson. It was there "*held* that the case should have been submitted to the jury on the question of negligence in the construction of the car with reference to the bolt, and as to this being the prox-imate cause of his death, the car not being one with which he was familiar, and it not being shown that such a con-struction was common among the cars he habitually handled." Says Commissioner IRVINE, at the close of the

opinion: "We think in this aspect of the case, and this only, there was evidence which should have gone to the jury as justifying an inference that the construction of the car with the bolt so projecting was a negligent construction, and the proximate cause of Thompson's death." As to the other causes of negligence pleaded in the petition, this court, in the same opinion, announced the rule as follows: "If the machinery, tools, or appliances furnished a servant by his master are obviously defective and dangerous, and the servant, notwithstanding, continues in the service, he thereby assumes the risks of any injury which he may sustain by reason of such defective appliances," following the rule as laid down in *Missouri P. R. Co. v. Baxter*, 42 Nebr., 793.

The judgment rendered in the first trial being reversed for the reason stated, a new trial was had, in which the jury returned a verdict in favor of the administrator, upon which judgment was rendered and the case again brought here for review, and again reversed. The judgment of reversal was based upon an instruction by the court upon the doctrine of comparative negligence, which it was held did not prevail in this jurisdiction. Error was also found in the admission of certain testimony as expert testimony, which, it was held, was incompetent as such.

In the last trial, the jury again returned a verdict in favor of the administrator of the decedent's estate for the full amount claimed in the petition, and allowed by statute, and we are asked to again review the case.

Numerous alleged errors are assigned as grounds for reversal. It is argued that the trial court erred in submitting to the jury the question of liability of the company by reason of the alleged defective coupling appliances, the imperfect condition of the track at the place of the accident; and in its rulings upon certain instructions relating to both questions. We can, perhaps, save some time by considering these questions together and at the same time make our views sufficiently clear. One of the

instructions requested by the company and refused, of which complaint is made, in effect advised the jury that the only question for them to determine was whether the truss-rod or bolt was negligently constructed, and if so, was it the proximate cause of the death of Thompson, and unless both questions were determined in the affirmative, a verdict should be returned for the defendant company. The other, in substance, directed that the deceased assumed the risks incident to his employment; that, under the undisputed evidence, he knew the dangers incident to the operation of the coupling appliances, and continued in the company's service without complaint, or promise of change, and that, if they found his death was caused by reason of the coupling appliances slipping by when attempting to make the coupling, then the plaintiff could not recover. An instruction was also requested by the company and refused, which directed the jury to disregard all evidence as to the condition of the track at the place of the accident as a cause of the injury complained of. These instructions were requested upon the assumption that the questions to which they relate have heretofore, in the same case, been decided, and are within the rule of "the law of the case," and to support this view our attention is called to the opinion first delivered by this court in the present case. As we have heretofore stated, it was therein held that, on the question of the alleged negligent construction of the truss-rod or bolt, the evidence in that trial was sufficient to warrant a submission to the jury as to the proper inference to be drawn therefrom; or, to put it another way, under the record as then presented, the evidence alone upon the question of alleged negligent construction of the truss-rod or bolt, and whether or not, if negligently constructed, it was the proximate cause of Thompson's death, was such as to require its submission to the jury for their determination, the refusal of which was prejudicial error. In discussing the evidence preserved in the record of that trial, Mr. Commissioner IRVINE, who wrote the opinion, in speaking

with reference to the coupling appliances, says: "So far as we have stated the evidence, we think it tends in nowise to disclose a cause of action. It falls clearly within the rule that if the machinery, tools, or appliances furnished a servant by his master are obviously defective and dangerous, and the servant, notwithstanding, continues in the service, he thereby assumed the risks of any injury which he may sustain by reason of such defective appliances." And again he says: "It is also alleged that the track at the point referred to was defective because of improper ballast; but there is no evidence to show that the method of ballasting employed was improper, or that it increased the hazard to employés; nor is it shown that the accident to Thompson was caused or contributed to in any way by the condition of the track." The conclusions reached were arrived at from an examination of the evidence then before the court. We are unable to say from the record now before us that the evidence now presented is not materially different from what it was on the first trial of the case. The evidence in different cases, and in different trials of the same case, may, and often does, differ in many essential particulars. It may shift and change as the current of a stream in a bed of sand. Not only may changes occur by reason of newly-discovered evidence, new witnesses whose testimony may supply a missing link, but often those having the management of a case turn the current of evidence in one direction at one time, and in an entirely new channel at another. If the evidence is the same, or substantially so, and made to thus appear, doubtless the rule would apply. Whether or not it is the same, we are unable to say from the record before us, which is now to guide us in our examination. It is but a fair and legitimate presumption to say that the trial court, in passing upon the instructions requested, and having before him the evidence in both trials, found a material difference in the testimony in the last trial from that of the first, and, therefore, determined that the opinion regarding the matter, an-

nounced in the first appeal, did not apply to the testimony as then existing. If called upon, or if it became necessary, we could say, from an examination of the record before us, whether a cause of action was proven regarding either of the questions under consideration, but the question being presented in the way it is, this is not required. The rule sought to be invoked is based upon the many utterances of this court, upon the proposition that a decision in a case, when once rendered, will thereafter be followed as the law of the case; and, in this instance, it is insisted that, it having been determined on the first appeal that the evidence was insufficient to prove a cause of action for negligence in respect to the alleged defective coupling appliances and improper ballasting of the roadbed at the place of the accident, this decision should control in all proceedings in the case had thereafter. The rule may be stated, as found in *Coburn v. Watson*, 48 Nebr., 258, as follows: "The determination of questions presented to this court in its review of the proceedings of an inferior tribunal become the law of the case, and, ordinarily, will not be re-examined in a subsequent review of the proceedings of the inferior tribunal on a second trial or hearing of the cause." To the same effect are *Fuller v. Cunningham*, 48 Nebr., 857; *Omaha Life Ass'n v. Kettenbach*, 55 Nebr., 330; *Richardson Drug Co. v. Teasdall*, 59 Nebr., 150; *Hayden v. Frederickson*, 59 Nebr., 141. From the different expressions of the court upon the question, we understand the rule to apply to a legal principle involved in the trial of a case, which, when once determined, becomes thereafter the law of the case, binding, not only on the trial court, but this court as well; and will not, ordinarily, be re-examined in a subsequent review of the proceedings of an inferior court had in the further trial of the action. A conclusion, however, arrived at from an examination of the testimony upon one trial of a case must necessarily be subject to modification or entire change, if, upon a subsequent trial, the testimony with respect to s. .h question is materially different. Regarding conclusions

reached from an examination of the testimony upon questions of fact, we understand the rule to be as announced in *Lane v. Starkey*, 20 Nebr., 586, wherein it is held: "The rule stated in *Hiatt v. Brooks*, 17 Nebr., 33, 'that a previous ruling by an appellate court upon a point distinctly made is a final adjudication, from the consequences of which the court can not depart nor the parties relieve themselves,' is applicable only to legal principles enunciated and rules of law laid down for the government of the inferior court upon the second trial. It has no reference to decisions on questions of fact solely where the evidence upon the second trial is materially different from that on the first." Says REESE, J., in the opinion: "We do not so understand the application of that rule. So far as the enunciation of any legal principle is involved which is common to both cases, the rule must be applied; but wherein the decision was upon questions of fact alone, as developed by the testimony upon the first trial, they can apply only to that case; and the testimony in this case—or rather in this stage of the case—being, in many respects, different from the testimony taken on the first trial, the case is before us to be decided upon its merits, uninfluenced by any conclusion of fact on the former hearing." In *Mattingly v. Pennie*, 45 Am. St. Rep., 88, decided by the supreme court of California, says Van Fleet, who wrote the opinion: "Respondent contends that on the former appeal the question of the sufficiency of the evidence to sustain a verdict for plaintiff was decided in favor of plaintiff; that plaintiff's evidence was substantially the same on the last trial as on the first; and that the decision on that point has become the law of the case, and precludes us from now considering the sufficiency of that evidence. * * * It is settled beyond controversy that a decision of this court on appeal, as to a question of fact, does not become the law of the case. But plaintiff contends that the question thus presented of the insufficiency of the evidence to support a verdict for plaintiff was a question of law, and was the very fact in judgment

on that appeal. Assuming, without deciding, that that view is correct, we are, nevertheless, of opinion that the point now presented is not the same as that so supposed to have been decided on the former appeal, and that we are therefore now entitled to consider it without being concluded by the former decision. We adhere to what was said on that subject in *Wixson v. Devine*, 80 Cal., 388, and will not extend the application of the doctrine of the 'law of the case' beyond the cases in which it has hitherto been held to apply." And it is there held: "The decision of an appellate court on appeal as to a question of fact does not become the law of the case." Our attention has been called to the case of *Wittenberg v. Mollyneaux*, 59 Nebr., 203, where the rule as heretofore announced is reiterated and applied to a question of evidence. That case was for a third time before this court for its decision. Reference was made therein to a decision in a former appeal upon the question of the recovery of gains and profits as an element of damages growing out of a breach of contract. It was decided that under certain conditions there could be such a recovery, but further held that, in the case at bar, there was an entire absence of necessary testimony to support a recovery for loss of gains and profits. In the third opinion, there being likewise an absence and lack of such testimony, the former opinion was deemed and held to be decisive of the question. The decision, in the first instance, partook more of the enunciation of a legal principle than a conclusion of fact derived from the testimony, there being in each instance no testimony of the character required before a recovery could be had on one of the items of damages claimed. We do not regard the opinion in that case as in conflict with the views herein expressed. It follows that a decision as to the sufficiency of the testimony on any particular feature of the case, as disclosed by the record on the first trial, is not binding upon a subsequent trial, where the testimony is, or may be presumed to be, materially different, and that in the present investigation

we are to be controlled by the record now before us, unin-
fluenced by such decision.

There is, we think, another view of the matter under
consideration, which concludes the company in its con-
tention with respect thereto. Not only were the instruc-
tions referred to, which in effect withdrew from the con-
sideration of the jury the questions to which they relate,
requested and refused, but other instructions on the same
subject, for the guidance of a jury in their considera-
tion of such questions, were requested and given. In-
struction No. 7, requested by the company and given, is
as follows: "The jury are instructed that if the machinery,
tools, or appliances furnished a servant by his master
are obviously defective and dangerous and the servant,
notwithstanding, continues in the service, he thereby as-
sumes the risk of any injury which he may sustain by
reason of such defective appliances." By instruction No.
10, requested and given, the jury were told in substance
that if they found the deceased was engaged in the serv-
ice of the company for some time prior to the accident,
was of mature age and experienced in the business in
which he was engaged, and had frequently, during his
service, performed similar duties to those in which he
was engaged when he received the injuries, and that he
knew, or could have known by the exercise of ordinary
care, that the coupling apparatus would occasionally slip
by, and had seen and known of its slipping by prior
thereto, and continued in the service of the company with-
out protest or promise of change, then he assumed what-
ever risk or danger there was in the use of such appli-
ances, and waived the right of recovery for any injury to
himself resulting therefrom. In instruction No. 16, re-
quested and given, the principle involved in the tenth
instruction was reannounced and the jury directed that
"if you further find that the injury and death of said
Amos Thompson resulted from the use of the coupling
appliance on C. B. U. P. coach No. 10, then the plaintiff
can not recover herein, and your verdict must be for the

defendant." In addition to the instruction directing the jury to disregard evidence as to the condition of the road-bed at the place of the accident, the defendant company submitted an instruction upon the question for the jury's guidance in their deliberation, which was given, and is as follows: "The jury are instructed that if they find from the evidence that such railroad track at the time of the accident to Amos Thompson was in a defective condition, that such condition caused or contributed to the injury complained of, and further finds from the evidence if it had continued in that condition for such a length of time previous to the date of accident, that the said Amos Thompson knew, or by the exercise of reasonable care should have known of its condition and he continued in the employment of the company with such knowledge or means of knowledge, without complaint, then and in that event the plaintiff can not recover herein on that branch of the case." These several instructions, which were requested by the company and given, are inconsistent with the ones refused. The court could not have consistently given all, and was compelled to choose between the two. It adopted the theory that the questions should be submitted to the jury. This was one theory the defendant had of the case, or else it were useless to have submitted the instructions given. We do not think the company ought to be permitted to request the numerous instructions that it did, some of which were inconsistent with the others, and then be allowed to complain because the court adopted a part of them consistent with one theory of the case, and refused the others because inconsistent with the ones given. It is said in *Clark v. Pearson*, 53 Ill. App., 311: "A party who presents to the court different. and antagonistic instructions, and such that if one be given, consistency requires that the other be refused, can not be heard to complain of the action of the court in erroneously deciding between the two." If the refusal of the peremptory instructions upon the questions to which they refer was error, then the court also erred in

submitting to the jury, under the instructions requested, the same questions for their consideration. We regard it as a sound principle, as well as a salutary one, that a party can not be heard to complain of an error which he himself has been instrumental in bringing about. *Walton v. Chicago, St. P., M. & O. R. Co.*, 6 C. C. A., 223; *Borden v. Croak*, 19 Am. St. Rep., 23; *Kincaid v. Higgins*, 1 Bibb [Ky.], 396; *Blakey v. Blakey*, 3 Marsh. [26 Ky.], 674; *Mudget v. Kent*, 18 Me., 349; *Loomis v. Wabash, St. L. & P. R. Co.*, 17 Mo. App., 340; *Price v. Town of Breckenridge*, 92 Mo., 378. We are of the opinion that the instructions requested by the defendant company and given, together with others, fairly and fully presented to the jury the law applicable to the two questions growing out of the alleged negligent construction of the coupling appliances and the condition of the road-bed, and it is fair to presume that the jury followed the instructions thus given in arriving at their verdict; and unless it affirmatively appears to the contrary, it can not be said that such instructions were disregarded. *Harper v. Wilgus*, 6 C. C. A., 45; *Mandeville v. Guernsey*, 51 Barb. [N. Y.], 99; *Ayres v. Hartford Ins. Co.*, 21 Ia., 193.

The final and ultimate test in the present case is whether or not, under the pleadings and all the evidence submitted, the jury were warranted in drawing the conclusion shown by the verdict returned; and if so, it will be presumed that the verdict was based only on the evidence which, under the instructions given, supported the verdict reached.

It is further argued that the trial court erred in refusing to give instruction No. 24, requested by defendant company, and also in giving instruction No. 3, on its own motion. The two instructions mentioned referred to the law of contributory negligence, which was raised in a mild form by the pleadings. In the instruction requested and refused, after stating that the plaintiff could not recover, if deceased was guilty of contributory negligence, it is stated: "In determining whether the deceased, Amos

Thompson, was guilty of contributory negligence, the jury may take into consideration the questions as to whether or not the train was, at the time, being moved under his signals and direction, also as to whether or not he had ample time and opportunity to place the link in the safest and most prudent place to make the coupling in question, also as to whether or not he had provided himself with a suitable link to make said coupling, also as to whether or not he exercised due and reasonable care in placing a link in the safest and most prudent place to make such coupling, also whether, under the circumstances, he had placed himself in a safe and prudent position to make the coupling; as well as all other facts and circumstances shown by the evidence introduced by either party. And if from all the facts and circumstances the jury believes that the said Amos Thompson did not, at the time, and under the circumstances and conditions exercise due and reasonable care for his own protection, or such care and prudence as an ordinarily prudent person would have exercised under like circumstances and conditions and that such failure, if failure there was, caused or directly contributed to the injury complained of, then the deceased would be guilty of contributory negligence and the plaintiff can not recover herein, and your verdict must be for the defendant." We do not think the instruction requested above criticism. It in effect stated the principle to be that contributory negligence would be imputed to an individual who did not exercise the greatest care and caution that an ordinarily prudent man would exercise under like circumstances. It speaks of the safest and most prudent place for putting the link, while the true rule would seem to be what under the circumstances would be regarded as an ordinarily safe and prudent place for the link. Its tendency was to require a higher degree of care and caution than is required by the true test. It falls within the rule uttered by LAKE, J., in *Dunbier v. Day*, 12 Nebr., 603, in that it directs attention to facts about which there is no

39

proof of negligence, and in its conclusion gave an exceedingly wide range to search for proof of negligence on the part of deceased. It is, we think, faulty in another respect, in entirely omitting and overlooking the important fact sought to be established by the evidence, viz., that the death of Thompson was occasioned by the alleged negligent construction of the truss-rod or bolt in the end of the coal car. The instruction given on the subject of contributory negligence is as follows: "The jury are instructed, that contributory negligence, under the law, is the doing or omitting to do some act, which a reasonably prudent man in the exercise of caution commensurate with an obvious peril confronting him would have done or have omitted to do, and which act or failure on the part of such person directly contributed to the injury." We are not impressed with the instruction as a clear and explicit expression of the law of contributory negligence. We are, however, to consider it in connection with, and as applicable to, the evidence in the case. Under the evidence, the coupling of the two different kinds of couplers, which were used in making the connection when the accident occurred, was attended with risks of injury and danger greater than ordinarily and usually accompany the performance of such an act. It was in this case, under the evidence, an obvious peril confronting the person making the coupling. By the instruction the jury were told that the deceased, in order to be free from contributory negligence, must exercise that degree of care and caution which a reasonably prudent man, in the exercise of caution commensurate with an obvious peril confronting him, would have exercised. This was stating the rule more strongly against the plaintiff than defendant company. It was not, we think, prejudicial to the defendant. In *City of Beatrice v. Ried,* 41 Nebr., 214, it is held in the second paragraph of the syllabus: "If one attempts to pass over a place of danger, the law requires him to exercise caution commensurate with the obvious peril; but this means that the law only requires of the party to exer-

cise ordinary care, the danger and his knowledge thereof considered." In the instruction now before us, when fairly considered in connection with the evidence, it is stated that the deceased, in the performance of his duties as brakeman in coupling the two cars, in the doing of which it was claimed there was contributory negligence on his part, must have done or omitted to do some act which a reasonably prudent man, in the exercise of caution commensurate with an obvious peril confronting him, under like circumstances, would have done or omitted to do. It can hardly be said the instruction was too favorable to the plaintiff. The converse, we think, is true, and its tendency was to require greater care and caution, rather than less, than would be exercised by ordinarily prudent men under like circumstances. If the peril was obvious, the deceased was required to exercise care and caution commensurate with the peril. This, however, is to be determined by the action of ordinarily prudent men confronted by such peril under similar circumstances. We do not, as already said, think the instruction prejudicial to the defendant company. Conceding the instruction on contributory negligence which was given to be technically incorrect, we think the proposition it contained was, in substance and effect, included in other instructions given, and for that reason no prejudicial error can be predicated upon it.

Several instructions were given at the request of the defendant, directing the jury that if deceased was engaged in the service of the company, and knew or might have known of the defective condition of the coupling appliances, and his death was caused thereby, the plaintiff could not recover under that issue on the evidence, as the deceased assumed the risks of his employment and could not, therefore, recover regardless of the question of contributory negligence. Having assumed the risks incident to his employment, it did not change the liability of the company as to the manner in which he discharged his duties. His assumption of the risks of employment

precludes his right of recovery for injuries growing out of the dangers incident to his duties, and the application of the rule would include all injuries thus received, whether he be guilty of contributory negligence or not. The principle announced in the instructions as to the risks assumed by the deceased, being broad enough to cover the contention as to contributory negligence, the lesser proposition becomes merged in the larger one. Additional instructions would have been in the nature of a repetition of the same principle, and not required. *Beavers v. Missouri P. R. Co.*, 47 Nebr., 762; *Barton v. McKay*, 36 Nebr., 632; *Atchison, T. & S. F. R. Co. v. Lawler*, 40 Nebr., 356; *Bushnell v. Chamberlain*, 44 Nebr., 751.

It is claimed that error was committed in the admission of certain testimony as expert testimony, which was offered and received over objections of defendant. One part of the testimony thus objected to was by a witness, who, at the time, was yardmaster, having charge of switchmen and brakemen, and who had been switchman himself, and, according to his testimony, had handled cars of all kinds. He was permitted to testify respecting the manner of the construction of the truss-rod or bolt, and to express an opinion as to its being properly or improperly constructed. It is contended that the witness had not shown himself qualified to testify regarding such matters. It is not, we assume, required that a person shall be an experienced car-builder, or one engaged in the construction of cars, or an architect whose business it is to plan the construction of cars, before, as claimed, he is qualified to testify as to what is a proper construction. One habitually handling cars of all kinds, and having an opportunity to observe the usual modes of construction thereof, would possess a knowledge regarding the subject qualifying him to speak with reference thereto, which, although perhaps not as thorough as that of an experienced car-builder, would yet be valuable in aiding the jury to rightly determine the mooted question regarding the truss-rod or bolt involved in the controversy. The witness possessed

knowledge superior to that of persons in the ordinary walks of life, which, we think, entitled him to speak upon the subject. The difference in degree of knowledge as between him and a car architect or builder would affect the weight to be given such testimony rather than determine a person's qualification to testify. It may be said, as a general rule, that the competency of a witness to testify as an expert rests very largely in the sound discretion of the trial court, whose ruling thereon will not be reversed unless clearly erroneous as a matter of law. *Fayette v. Chesterville,* 77 Me., 28, 33; *Perkins v. Stickney,* 132 Mass., 217, 218; *Stillwell Mfg. Co. v. Phelps,* 130 U. S., 520; *Allen's Appeal,* 99 Pa. St., 196, 202. Again it is urged that the testimony of this witness, and that of two others who had had years of experience as brakemen on railroad trains, which was permitted to be given over objections of defendant, as to the duties of a brakeman in inspecting coupling appliances when making couplings of cars, and also the duty of car inspectors regarding the inspection and observation of defective appliances on cars in use, was erroneously admitted. The testimony of this character objected to is made clear by the following interrogatories and answers thereto:

Q. Then Mr. Switzer, I will ask you to state to the jury what are the duties of a brakeman or switchman when going in between cars to make a coupling, in reference to examining draw-bars and coupling apparatuses?

A. Well, if a man looks at his draw-bars, and they are in good shape, he is to make the coupling.

Q. What is his duty as to looking underneath the car while the train is in motion with which to make the coupling?

A. A man ain't supposed to get under the car when the train is moving.

Q. Just state to the jury, if you know, what the duties of a car inspector were at that time?

A. When a train comes in the yards, the car repairer

is supposed to examine his train, and, if any cars are in bad shape, he is to set them out and have them fixed.

This testimony was elicited in support of a theory of the case claimed by the plaintiff, wherein he sought to prove that, at the time of the accident, the Miller hook or coupling bar had dropped down lower than its natural or ordinary position because of the loosening of a support bar underneath it, and that the accident occurred because the Miller hook, by reason of its uncommonly low position, slipped past and beneath the draw-bar on the coal car, and not laterally, as would be the case by reason of the different forms of construction of the two coupling appliances. The testimony, in this view of the case, and in support of this theory, was, we think, admissible. It was regarding a subject peculiarly within the knowledge and experience of those testifying, and not of such a character as to be within the knowledge of men of common education and experience in considering and forming an opinion upon it, under the rule laid down in *Atchison, T. & S. F. R. Co. v. Lawler*, 40 Nebr., 356. The contention of the plaintiff was that, entirely aside from the form of the construction of the Miller hook, the pieces composing the same and supporting it had become loosened, thereby allowing it to fall below its ordinary and natural position, by reason of which, and notwithstanding an attempt being made to couple it in the special manner required, it slipped underneath the other draw-bar, thereby contributing to the injury complained of; and that the deceased, in the performance of his duties, was not expected or required to make careful examination and inspection for this character of defects. The opinion, therefore, of witnesses qualified to speak upon the subject, was admissible for the purpose of giving to the jury a clear understanding as to his duties relative to such matters; and, as a correlative of the duties imposed upon him, it became proper to show whose duty it was to make such inspection. The duties of a brakeman and other employees

of a railroad company, regarding such matters, must, in a measure, be controlled by the nature of the work to be performed, the duties of others in the general employment, and the usages, customs and rules of the company respecting such matter, which can be ascertained only from those acquainted with, and engaged in, such work. In the case at bar, as applied to the question under consideration, the jury, without the aid of testimony of the character given, were not in a position to intelligently pass upon the question as to how far it was incumbent upon the deceased to acquaint himself with the condition of the coupling appliances required to be used by him in the discharge of his duties. Such knowledge is not, we hold, within the possession of men of common experience and education generally, and is, therefore, admissible as expert or opinion testimony. In Rogers on Expert Testimony, page 19, section 6, the rule is laid down as follows: "The opinions of experts or skilled witnesses are admissible in evidence in those cases in which the matter of inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it, for the reason that the subject-matter so far partakes of the nature of a science, art or trade, as to require a previous habit, or experience, or study in it, in order to acquire a knowledge of it. When the question involved does not lie within the range of common experience, or common knowledge, but requires special experience, or special knowledge, then the opinions of witnesses skilled in the particular science, art or trade to which the question relates, are admissible in evidence." In *McCray v. Galveston, H. & S. A. R. Co.*, 3 Am. & Eng. R. Cas. [n. s.], 276, 281, it is held that evidence of the duties of a brakeman by one who had knowledge of such duties should be admitted.

On the trial different witnesses testified relative to the alleged improper condition of the road-bed or ballasting at the place of the accident. Some of the witnesses testified on the point mentioned as experts, and were per-

mitted to express an opinion, whether, at the place mentioned, the road-bed was in a proper or improper condition as to the manner of ballasting. An hypothetical question was put to one witness, fairly reflecting the testimony on the point mentioned, in which he was asked, "What kind of surfacing would you call that?" Objection to the question was interposed because the question was "not within the issues of the case, calling for the conclusion, and not a proper hypothetical question, immaterial, irrelevant and incompetent." Answer was permitted, notwithstanding the objection, the witness replying, "Well, I would say that was rather bad construction." The answer was not responsive, and probably would have been stricken out on motion. It signified nothing and from it an intelligent idea could not be formed as to whether the ballasting was done and maintained in the ordinary and usual manner, or whether it was improper and imperfect. The test of the admissibility of the evidence is to be determined upon the questions asked, rather than upon the answers returned. While the form of the question may be improved upon, it was not so seriously objectionable as to require its exclusion. It is said that the issue to which the question was directed was eliminated in the first opinion rendered. But, as we have seen, this applied only to the testimony on the first trial, and does not preclude new testimony upon the same subject at a subsequent trial. The question was in line with other evidence upon the same subject, regarding which there was much testimony *pro* and *con.* The general character of the evidence to prove the condition of the road-bed was, we think, admissible, and the witnesses who testified were not incompetent to speak upon the subject. In *Ft. Worth & D. C. R. Co. v. Wilson*, 24 S. W. Rep., 686, the supreme court of Texas held that, in an action against a railroad company, its roadmaster and section foreman, who had charge of the track where the derailment and injury occurred, and who had had several years of experience in railroading, were com-

petent to testify that, in their opinion, the track at such place was not properly constructed. The rule is well supported by a great many authorities, among which may be found the following: *Fitts v. Cream City R. Co.*, 59 Wis., 323; *Cross v. Lake Shore & M. C. R. Co.*, 69 Mich., 363; *Laughlin v. Street R. Co.*, 26 Am. & Eng. R. Cas., 377, 378; *Hayes v. Southern P. R. Co.*, 11 Am. & Eng. R. Cas. [n. s.], 420.

Another witness, a machinist by trade, was permitted to testify over objections, as an expert, that, in his opinion, a person could not tell by an examination of the truss-rod or bolt in the coal car whether it had been removed since the car was constructed in 1892. Evidence of this character was, we think, inadmissible. We do not, however, regard it as such prejudicial error as to call for a reversal of the case. There is a great mass of testimony as to the manner of construction of the bolt. A great many witnesses testified regarding the matter, and in view of the large volume of the testimony offered on this subject, we do not think the jury could have been perceptibly influenced by the statement referred to. It is a direct contradiction of some of the witnesses, when the witness should only have been permitted to give his view as to the construction of the bolt, and the effect, marks or changes of appearance, if any, in the event of the removal of the bolt after the construction of the car, leaving it to the jury to say, which after all they were required to do, what was the truth on the point in controversy.

Exceptions are taken to the rulings of the trial court on the questions asked in the cross-examination of certain witnesses testifying on behalf of the plaintiff. Witnesses who had been members of the coroner's jury, and who testified in the case, were asked on cross-examination as to the conclusions reached and the findings returned in the verdict of the coroner's jury. Objections to the questions were sustained and the evidence excluded. The testimony in chief related to the observations of the wit-

nesses immediately after the accident, as to the nature of the wounds on the deceased, and as to the appearances and condition of the end of the coal car and of the coach respectively where the coupling was attempted to be made. The cross-examination appears to have been for the purpose of showing a conflict between the conclusions reached on the coroner's jury and the testimony given on the trial. An objection to the exclusion of this proposed evidence may be disposed of by saying that afterwards the verdict of the coroner's jury was admitted in evidence, thus establishing what was sought to be established by the cross-examination, and rendering immaterial the ruling of the trial court thereon. The exclusion of evidence of a fact established by other competent and uncontradicted evidence is not ground of error: *Clough v. State,* 7 Nebr., 320, 333; *Delaney v. Errickson,* 11 Nebr., 533; *Barr v. City of Omaha,* 42 Nebr., 341, 346.

Another witness on behalf of the plaintiff was asked on cross-examination concerning the condition of the truss-rod or bolt, and whether or not he found it in proper condition. This was objected to as not proper cross-examination, and the objection sustained. Complaint is made of this ruling. The witness in his examination in chief, after qualifying for the purpose of testifying as an expert, was asked only to define what would be a proper construction of a truss-rod or bolt in cars of the kind to which the coal car mentioned belonged. He was asked nothing regarding any particular car, and we think the question was not one strictly proper to be asked on cross-examination. The latitude to be given in cross-examination rests largely in the discretion of the trial court, and should always be restricted to facts and circumstances brought out on direct examination. *Davis v. Neligh,* 7 Nebr., 84; *Cool v. Roche,* 15 Nebr., 26; *Mordhorst v. Nebraska Telephone Co.,* 28 Nebr., 610; *Hurlbut v. Hall,* 39 Nebr., 889. The record also discloses that this same witness was called for the defense, and testified to the same facts sought to be brought out on his cross-examination

by defendant. This fact renders entirely harmless the ruling of the trial court, conceding it to have been erroneous.

Error is claimed in the admission of testimony as to statements made by the conductor of the train that caused the accident within about one-half hour thereafter relative to the cause of the death of the deceased. The testimony was offered and admitted upon the theory that the statements were a part of the *res gestæ*. In no event can error be predicated upon the admission of this testimony, for the reason that, by an instruction of the court, it was wholly withdrawn from the jury's consideration. Error in admitting improper evidence is cured by the court's withdrawal of such evidence from the jury. *American Building & Loan Ass'n v. Mordock*, 39 Nebr., 413; *Obernalte v. Johnson*, 36 Nebr., 772; *Nelson v. Jenkins*, 42 Nebr., 133.

Complaint is made because interest is allowed on the amount of damages, as found in the verdict of the jury, from the date thereof to the date of the rendition of the judgment on the verdict. The delay was caused by reason of the presentation by the defendant company of a motion for a new trial and the consideration of the same. The allowance of interest was, we think, proper, and clearly falls within the rule announced in *Fremont, E. & M. V. R. Co. v. Root*, 49 Nebr., 914, wherein it is said: "It is claimed that the amount of the judgment should not have exceeded that of the verdict, that the court erred in allowing and including in the judgment the interest as we have before stated. The delay in the rendition of judgment was caused by the filing and pendency of the defendant's motion for a new trial, and it was but just and right that the plaintiff was in the judgment accorded interest on the verdict from its date to the time of judgment."

Finally, it is urged that the jury disregarded the instructions of the court, that the verdict is contrary to the instructions and the evidence, and is not supported by

sufficient evidence, and that the court erred in not award-
ing a new trial. These objections may be summed up in
the one proposition of whether the evidence is sufficient
to support the verdict and judgment. For this purpose
we are disposed to eliminate from consideration every
branch of the case, save the alleged negligent construc-
tion of the truss-rod or bolt, and the relation between it
and the death of the deceased, if any exists, and the evi-
dence bearing upon these several questions. We regard
the evidence as to the kind and character of the coupling
appliances, and the condition of the road-bed at the place
of the accident, as insufficient to give to the plaintiff
under the proof a cause of action; and as to these matters,
the deceased assumed the risks of injury incident to the
employment in which he was engaged.

In the first opinion in this case, it was held that the
evidence as to the alleged negligent condition of the
truss-rod or bolt, and whether it was the proximate cause
of the deceased's death, was such as should have been
presented to the jury for them to draw therefrom such
inference as the evidence might warrant. Assuming the
evidence on this feature of the case to be as strong and
convincing as in the first trial, the adjudication in that
case has already determined the question adversely to
the defendant company. A careful examination of the
evidence relating to the matter confirms us in our judg-
ment as to the correctness of the views first expressed.
It is, we think, sufficient to support the finding that the
truss-rod or bolt was negligently constructed, and was
the proximate cause of Thompson's death. The evidence
proves or tends to prove that the wound on the body of
Thompson conformed in shape and size with the end of
the rod more nearly than with any other instrument on
the end of the cars between which the accident occurred.
The place of the wound found on the deceased corre-
sponded in height to that of the rod. There was testimony
tending to show that the wound was of a nature sufficient
in itself to produce death. The deceased, according to

the testimony of some of the witnesses, was facing the coal car, and was seen near the outer edge of the car; he seemed to be thrown up, as testified to by one witness, as the cars came together; and was next seen with his face in the other direction, "dragging" on the coach as it receded in consequence of the concussion of the cars, whereon he supported himself for a few steps, and then fell outside of the rail, and was run over on the right arm and leg, which were cut off near the body by the oncoming coal car. The conductor of the train, a witness on behalf of the defendant, and who made the coupling soon after the accident, testified that he was ready to jump from between the cars in case he saw that the draw-bars or coupling apparatus were going to slip by. The jury, we think, were warranted in inferring from the evidence that the deceased, at the time of the accident, was likewise trying to protect himself, and was caught or struck by the truss-rod, and thereby came to his death. The space or distance between the cars is of vital importance to those whose duty calls them to occupy it when the cars are being pushed together for coupling or other purposes, and where, on the end of a car, an unnecessary projection of one and a half or two inches exists, we think under the evidence it may well have been the moving and proximate cause of Thompson's death.

Two different trials have been had, resulting in verdicts for plaintiff. New trials have been denied by the trial court, and we are not, in reviewing the last, warranted in overruling the verdict and judgment, unless it is clearly insufficient to support them. *Summers v. Simms*, 58 Nebr., 579; *City & S. R. Co. v. Waldhaur*, 11 S. E. Rep. [Ga.], 452; *Johnson v. Blanchard*, 5 R. I., 24; *Cole v. Fall Brook Coal Co.*, 87 Hun [N. Y.], 584; *Bennett v. Runyon*, 34 Ky., 422; *Louisville & N. R. Co. v. Connelly*, 7 S. W. Rep., 914. We now think, as expressed in the first opinion, that the evidence is sufficient to be submitted to the jury, and to warrant an inference of negligence on the part of the defendant company, causing the death of the deceased, for which a liability against it arises.

Perceiving no reversible error in the record, the judgment should be, and is,

AFFIRMED.

SULLIVAN, J., concurring.

I think every question essential to the decision of this case has been correctly decided, and that the judgment should be affirmed; but I do not agree to all that is said in the opinion.