Lake, Ch. J.
This is a writ of error to the district court for Buffalo county. There are no less than twenty-one nominal objections to this record in the assignment of errors, but I shall content myself with noticing those only which possess, at least, the shadow of merit.
I. It is objected to the jurisdiction of the court, that it was not in legal session when the indictment was found, and the trial and judgment had. This objection rests solely upon the assumption that the court was held without authority of law, which, if true, would render all of its proceedings absolutely void. The objection' urged to the grand jury rests upon the same basis, as this body could have no legal existence, nor perform any valid act, at a time when the court could not be held. The record before us purports to be of the adjourned September term, which was actually held on the second Monday of December following. The regular Septem *286 ber term for Buffalo county was fixed by law for the second Monday in September, but it was not then held. It appears that the judge of that district, on the eighth day of September, five days before the time appointed for the court to be held, sent to the clerk an order of adjournment in these words:
“ Fremont, Sept. 8, 1875.
At the request of the attorneys of Buffalo county, I hereby adjourn the district court for Buffalo county until the 2d Monday of next December.
[Signed] Samuel Maxwell, Judge.”
This order is not quite as definite as it might have been, or as is desirable, in this, that it omits to name the term to which it was intended to apply; nor does it, by mentioning the day from which the adjournment was to date, or in any other manner specially designate the-September term as the one which the order was intended to effect. But no doubt or embarrassment seems to have been occasioned to any one in consequence of this indefiniteness. It is not an unreasonable presumption to hold that it was intended to apply to the next regular term — -the term next following the promulgation of the order.
There can be no doubt that in the absence of a prohibitory statute, the district court, when in actual session, may be adjourned by the judge to any time he may see fit, not beyond the next regular term for that county, provided it do not interfere with a regular term in any other county in his district. We regard this as one of the inherent powers of the court, to be exercised at the pleasure of the judge. Therefore had the judge of the third district been present and formally ojtened said court on the thirteenth of September, he could immediately have adjourned it to the second Monday in December. No legislative authority in such case would have been requisite to the validity of the order.
*287 But in vacation it is otherwise. Then the judge has no authority, nor can he perform any official act whatever, unless specially authorized by the legislature. In respect to the adjournment of the court in vacation, section twenty-six, chapter fourteen .of the General Statutes provides: “If the judge is sick, or for any other sufficient cause is unable to attend court, at the regularly appointed time, ho may by a written order direct an adjournment to a particular day therein specified, and the clerk shall on the first day of the term, or as soon thereafter as he receives the order, adjourn the court as therein directed.” This was the authority under which the judge assumed the responsibility of an adjournment of the court as before stated. But we are told that the judge was not sick nor unable to attend and hold the court, at the time fixed by law, had he been so disposed. We are of opinion, however, that the reason which operated on the mind of. the judge, and induced him to send the written order of adjournment, cannot be questioned in this proceeding. It is enough to know that he acted upon grounds which he deemed “sufficient cause,” and adjourned the court. He was not required to disclose that cause, but having done so does not subject his action in this respect to judicial criticism by this court.
It is particularly objected that the clerk did not formally adjourn the court upon receiving the order. It is true that the record does not show that he did so, nor was it absolutely necessary that it should. However, the record being silent on this point, the presumption is that he performed his duty, and published the order as the statute requires. The fact that the record makes no mention of any action on his part, is of no consequence; it contains the order of the judge, and that is enough.
II. The objection to the indictment cannot be sustained. The usual formal conclusion, viz.: “And the jurors aforesaid * * * do say * * * did kill *288 and murder,” was omitted. In Anderson v. The State, 5 Pike, 445, the supreme court of Arkansas held this allegation to be merely formal and unnecessary to a good indictment. The court say “ it is only a repetition and conclusion of law from the facts previously stated.” And in Hogan v. The State, 10 Ohio State, 459, it is said: “The allegation purports to be, and is, nothing more than an argumentative statement of the legal results of the facts previously stated,” and. where it was inserted, could not “ cure any defects in the premises on which it assumed to be predicated.” See also Fouts v. The State, 8 Ohio State, 98.
This indictment sets forth with great particularity and certainty all of the essential ingrediénts of the crime of murder. None of the material facts or words, necessary to show that the defendant committed it, are omitted. The accused is fully advised as to what it is that he is called upon to answer.
III. The motion for a change of venue, and for a continuance, were both addressed to the sound discretion of the court. We discover no abuse of that discretion, and where such is the case the ruling will not be interfered with.
It has been the practice of the district courts to permit counter affidavits to be filed on motions for change of venue, and we see no good reason for excluding them. It would, in our opinion, be conducive of no good whatever, to compel the court to change the place of trial at the mere caprice of the defendant, and on his swearing to a state of facts well known to every intelligent and responsible citizen of the county to have no foundation in truth. While it is the duty of the court to guard well all the rights of a defendant in a criminal case, it is not required, nor would it be good policy, to exclude well established facts bearing directly upion the motion nor to *289 compel tlie court to change the venue at the mere whim of a person charged with crime.
IY. The jury that tried the cause was legally impaneled. It is true that one of the orders for talesmen, in directing that they be called from a particular portion of the county, could not have been sustained. But this order, although evidently made with the intention, solely, of obtaining a jury as far removed as possible from the scene of the murder, and in the interest of the accused, was promptly vacated, on objection from his counsel, and direction given that they be drawn from the body of the county. Thus the error which might otherwise have been fatal was effectually cured.
As to the oath administered to the jury, the record does not purport to set it out in the very words used. In one place it recites that “ said panel of said twelve jurors was sworn to try the cause,” and in another that the “jury were sworn to well and truly try and true deliverance make upon the issues joined between the said parties.” This is proof that an • oath was administered, and we must presume it to have been, at least substantially, in the words of the statutory form.
Y. It is ^objected to the instructions given by the judge oil his own motion: First. That although embodying several distinct propositions of law, they were not paragraphed, nor numbered, as required by the act of February, 25, 1875. Second. That the law of the case was not correctly given.
As to the first point, it is true that section one of said act declares it to be the duty of the judge to reduce his instructions to writing before giving the same to the jury, unless the same be waived by counsel in open court, and entered of record in the case. This section is no doubt mandatory, and a non-compliance in any case if properly brought to the attention of this court, would call for a *290 reversal of the judgment. But in this case all of the charge was reduced to writing, at the proper time, and there is no complaint in this respect. Section four of the act provides, among other things, that “all instructions given to the jury by the court on its own motion, must be plainly and legibly written, in consecutively numbered paragraphs, and filed by the clerk before being read to the jury by the court.” This provision we regard as so far imperative, that a party may insist upon its being observed by the court. It was intended, doubtless, that each distinct proposition of law, or statement of fact, should be so set forth as to enable counsel readily to comprehend its purport, and if desirable to except to it by a simple reference to its number. It was also intended, or at least it has the effect, -when taken in connection with the first section of the act, to obviate the necessity of a formal bill of exceptions in order to obtain a review of the instructions in the appellate court.
But the right given by this section is one that may be waived, and it will be regarded as waived, when the instructions are not excepted to. So too, where a particular clause or sentence of a written instruction is singled out and excepted to as not being a correct proposition of law, as was done in this case, it will be considered as a waiver of the right to have the charge paragraphed and numbered.
The only exception taken to the charge of the court was to these words, “you will allow no false sympathy to sway you from a proper discharge of your duty.” We perceive nothing in these words, especially when taken in connection with the context, in the least objectionable; and the entire instruction, so far as it went, laid down the law applicable to the case correctly.
YI. There were a large number of instructions, submitted to the court by the prisoner’s counsel, to be given *291 to the jury. Among them were several which embodied propositions substantially like those already given, and they were properly rejected for that reason. But there were at least four which we think ought to have been given. While the evidence may not'lead us to believe that they would have secured a different result, yet inasmuch as there was some testimony to which they were applicable, and the instructions of the court not covering’ -the entire ground, it was the right of the accused to insist upon their being submitted to the jury. These instructions were the third, fourth, fifth, and ninth of the list as submitted to the court, as follows.
Third. “You may take into consideration the intoxication of the accused at the time of the killing, if you find he was intoxicated, as' a circumstance to show that the act was not premeditated.”
Foxvrth. “It is proper for you to consider any state or condition of the prisoner at the time of the killing, that is adverse to the proper exercise of the mind and the undisturbed possession of the faculties.”
Fifth. “And if you believe that at the time of the killing the accused was intoxicated, yon may consider the fact to rebut the idea that it was done in a cool and deliberate state of the mind necessary to' constitute murder in the first degree.”
Ninth. “Unless you are satisfied beyond a reasonable doubt that the accused, at the time of the killing, was in such a state of mind that he could form an intention maliciously to kill, and that he did form such intention, you cannot convict him. of a higher crime than manslaughter.”
One witness called by the prosecution had' testified that the prisoner “was drunk” at the time of the affray, and one called on behalf of the accused swore that he was “very intoxicated.” There was no contradictory *292 testimony on this point, save the inference necessarily drawn from what he said and did on that occasion.
The court had instructed the jury on this subject, merely, that drunkeness could be considered only “for the purpose of determining from the evidence whether the prisoner was in such a condition, as to be incapable of forming the ¡purpose of taking the life of the deceased, and deliberately carrying that purpose into execution. If you find he was capable of forming such purpose, and deliberately, and with premeditation, carrying such purpose into effect, it would be murder in the first degree.”
The last sentence of this instruction was clearly erroneous, although no exception was taken thereto. It, in effect, assumed, that if the prisoner were found to have been ca/pable of committing the crime of murder in the first degree, it would be enough to warrant his conviction for that offense, whether he actually formed the purpose, with .deliberation and premeditation, to do so, or not. Such being the effect of the instruction given by the court on the subject of drunkenness, the refusal to give those prepared on behalf of the prisoner, above quoted, if substantially correct propositions of law, could not properly be based on the alleged fact, that in substance they had already been given.
"We are of opinion, that in view of the testimony before the jury, they should have been instructed substantially as requested in these rejected propositions, and that for the failure to do so the court below committed an error which calls for the reversal of the judgment, and a trial de novo.
Reversed and remanded.
Gantt, J., concurred. Maxwell, J., having tried the case below did not sit.