Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/01/2023 09:08 AM CST

State of Nebraska, appellee, v.
Trenton R. Esch, appellant.
___ N.W.2d ___

Filed December 1, 2023.    No. S-22-855.

1. **Jury Instructions: Appeal and Error.** Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.
2. ____: ____. All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal.
3. ____: ____. Failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error indicative of a probable miscarriage of justice.
4. **Effectiveness of Counsel: Appeal and Error.** An appellate court resolves claims of ineffective assistance of counsel on direct appeal only where the record is sufficient to conclusively determine whether trial counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance as matters of law.
5. ____: ____. An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing.
6. **Effectiveness of Counsel: Proof: Appeal and Error.** When reviewing an ineffective assistance of counsel claim on direct appeal, the question is whether the record affirmatively shows that the defendant's trial counsel's performance was deficient and that the deficient performance actually prejudiced the defendant's defense.
7. **Effectiveness of Counsel: Proof.** A court may examine performance and prejudice in any order and need not examine both prongs if a defendant fails to demonstrate either.
8. **Criminal Law: Jury Instructions.** When there is an applicable instruction in the Nebraska Jury Instructions, the court should usually give that instruction to the jury in a criminal case.

9. **Constitutional Law: Jury Instructions: Proof.** So long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the U.S. Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury.

10. **Jury Instructions: Presumptions.** It is presumed that a jury followed the instructions given in arriving at its verdict, and unless it affirmatively appears to the contrary, it cannot be said that such instructions were disregarded.

11. **Criminal Law: Intoxication: Proof.** Neb. Rev. Stat. § 29-122 (Reissue 2016) redefined the mental state elements of all subjective criminal offenses in Nebraska to provide for an objective inquiry: whether the State proved circumstances surrounding the offense that would otherwise establish the requisite mental state "but for" the defendant's voluntary intoxication.

12. **Criminal Law: Rules of Evidence: Other Acts.** In a criminal case, Neb. Rev. Stat. § 27-404(1) (Cum. Supp. 2022) operates as a broad exclusionary rule of relevant evidence that speaks to a criminal defendant's propensity to have committed the crime or crimes charged.

13. **Rules of Evidence: Other Acts.** Neb. Rev. Stat. § 27-404(2) (Cum. Supp. 2022) operates as an inclusionary rule of evidence that provides that evidence that raises a propensity inference is admissible for other proper purposes, including proof of motive, intent, preparation, or absence of mistake or accident.

14. **Criminal Law: Rules of Evidence: Other Acts: Trial: Proof.** While evidence is not an "other act" under Neb. Rev. Stat. § 27-404(2) (Cum. Supp. 2022) when it only tends to logically prove an element of the crime charged, proof of another distinct substantive act is admissible in a criminal prosecution when there is some legal connection between the two upon which it can be said that one tends to establish the other or some essential fact in issue.

15. **Rules of Evidence: Records.** Under Neb. Rev. Stat. § 27-404(3) (Cum. Supp. 2022), a proponent of evidence offered pursuant to § 27-404(2), upon objection to its admissibility, is required to state on the record the specific purpose or purposes for which the evidence is being offered, and the trial court must similarly state, on the record, the purpose or purposes for which such evidence is received.

16. **Criminal Law: Rules of Evidence: Other Acts: Proof: Jury Instructions.** Neb. Rev. Stat. § 27-404(3) (Cum. Supp. 2022) provides that in criminal cases, before the admission of evidence under § 27-404(2), the prosecution must prove to the court, outside the presence of any jury, by clear and convincing evidence that the accused

committed the crime, wrong, or act. When admissible, upon a party's request, the trial court must instruct the jury as to the specific purposes for which the evidence was received.

17. **Homicide: Words and Phrases.** For a killing to occur upon a sudden quarrel, the defendant must have actually lost self-control and in conditions that would cause a reasonable person to lose normal self-control.

18. **Motions for Mistrial: Motions to Strike: Appeal and Error.** Error cannot ordinarily be predicated on the failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the jury is admonished to disregard such material.

Appeal from the District Court for Custer County: KARIN L. NOAKES, Judge. Affirmed.

Mark E. Rappl, of Naylor & Rappl Law Office, for appellant.

Michael T. Hilgers, Attorney General, and Nathan A. Liss for appellee.

HEAVICAN, C.J., MILLER-LERMAN, CASSEL, STACY, FUNKE, and PAPIK, JJ., and PIRTLE, Chief Judge.

HEAVICAN, C.J.

## I. INTRODUCTION

Trenton R. Esch appeals from his convictions and sentences after a trial by jury for first degree murder,[1] use of a deadly weapon to commit a felony,[2] and possession of a deadly weapon by a prohibited person.[3] Esch received a life sentence for his conviction of first degree murder and consecutive sentences of 45 to 50 years' imprisonment for his use and possession of a deadly weapon.[4] Because of the life sentence imposed by the district court, this appeal was directly filed with this court.[5]

---

[1] Neb. Rev. Stat. § 28-303 (Reissue 2016).

[2] Neb. Rev. Stat. § 28-1205 (Reissue 2016).

[3] Neb. Rev. Stat. § 28-1206 (Cum. Supp. 2022).

[4] See Neb. Rev. Stat. § 28-105 (Cum. Supp. 2022).

[5] See Neb. Rev. Stat. § 24-1106(1) (Cum. Supp. 2022).

## II. BACKGROUND

Esch's charges arose from the death of Esch's stepmother after Esch discharged a firearm at her on July 11, 2020. Esch was 44 years old.

It was undisputed at trial that Esch's stepmother was shot multiple times when Esch emptied the magazine of a .22-caliber target pistol at her. The sole issue at trial was the grade of homicide Esch committed: whether Esch shot his stepmother purposely and with deliberate and premeditated malice (first degree murder)[6]; intentionally, but without premeditation (second degree murder)[7]; or without malice upon a sudden quarrel (manslaughter).[8] We recount the evidence presented to the jury of events particularly relevant to this issue.

Shortly after Esch was born, his parents divorced, which the record suggests was related to his father's alcoholism. His father later remarried and became sober. Esch's father lived and farmed in Broken Bow, Nebraska. As a child, Esch spent every other weekend with his father and his paternal grandparents on his grandparents' neighboring farm. His relationship with his stepmother was strained, and Esch felt that she did not like him and bullied him and his father.

After Esch graduated from high school, he forewent attending college and assisted his aging grandfather in running his grandparents' farm for a decade until his grandfather died in 2004. Esch then took over the farming operation and cared for his grandmother. Esch's grandmother, his father, and Esch discussed the farm's future on a couple of occasions. After these discussions, Esch's grandmother deeded the farm to Esch's father, and there was at least some consideration that

---

[6] See § 28-303.

[7] See Neb. Rev. Stat. § 28-304 (Reissue 2016).

[8] See Neb. Rev. Stat. § 28-305 (Reissue 2016). See, also, *State v. Smith*, 282 Neb. 720, 806 N.W.2d 383 (2011), *overruling State v. Jones*, 245 Neb. 821, 515 N.W.2d 654 (1994); *State v. Pettit*, 233 Neb. 436, 445 N.W.2d 890 (1989).

Esch would later inherit the farm. Esch's stepmother was present for one of those discussions.

In 2007, Esch's grandmother broke her hip and was moved into a nursing home. Esch moved into his grandparents' house and continued running the farming operation. Shortly thereafter, Esch's father deeded some of the farmland to him. His grandmother passed away in 2011.

In 2012, Esch was convicted of felony criminal mischief[9] and sentenced to 20 to 36 months' incarceration.[10] While Esch was incarcerated, his father committed suicide, for which Esch blamed his stepmother's bullying. After his father's death, Esch learned that his father had disinherited him in a 2010 will, and his stepmother became the owner of his grandparents' house and farm. Esch believed his stepmother bullied his father into removing Esch from the will.

Esch completed his sentence in 2015 and resumed farming the land his father deeded him. But Esch's stepmother did not let him return to his grandparents' home and deeded some of the property to Esch's half sisters. Thereafter, Esch filed a civil suit alleging that his grandmother established a constructive trust and that Esch's father held the property for his benefit. That suit was ultimately unsuccessful.

While the civil suit was pending, Esch's stepmother and half sisters sought harassment protection orders, alleging that Esch was harassing them with phone calls and text messages. The harassment protection orders were granted, and Esch was ordered to have no contact with them.

Esch later violated the harassment protection orders when he texted one of his half sisters, "hope your husband shows up at the fair this year to help with the calves," because at the fair the year before the son's calf "drug him all over the fairgrounds," as well as when Esch later called his stepmother about an upcoming suicide walk. Esch was convicted of the

---

[9] Neb. Rev. Stat. § 28-519 (Reissue 2016).

[10] See *State v. Esch*, 290 Neb. 88, 858 N.W.2d 219 (2015).

violations and sentenced to county jail for a total of 180 days. He completed serving the sentences in March 2020.

On the evening of July 11, 2020, Esch stopped at a gas station. A witness who knew Esch testified that Esch was "probably pretty intoxicated" because he observed Esch stumble when pumping gas and Esch's speech was slurred when conversing. The witness testified that after the two exchanged pleasantries, Esch stated, "I'm thinking about fuckin' somebody up." However, a police report reflects that the witness told law enforcement that Esch asked him, "Have you ever felt like kicking somebody's ass?" The witness testified that he was caught off guard by the comment, but then remembered an incident at work 2 days prior, where a customer "kind of ticked me off," so the witness responded, "[Y]es, I feel like that sometimes."

In his defense, Esch testified that his question was in reference to a driver who had almost caused a collision with Esch's vehicle. Esch further testified that he then went to visit his stepmother to offer to purchase his grandparents' farm in disregard of the harassment protection orders. When he arrived at his stepmother's home, he knocked on the front door and proceeded to enter. His stepmother "got up and started yelling and ran towards [him]." Esch attempted to calm her down but was unsuccessful. When she said, "[Y]ou're acting—or you are crazy like your dad," Esch said that "turned the switch" and he snapped.

Two of Esch's stepmother's grandchildren were in the home. Her grandson testified that "[Esch] came in and he said, I've had enough. My grandma said, get out, and then he went up to her and shot her." He was 9 years old at the time. Video evidence showed that Esch was in the home for approximately 30 seconds.

The jury found Esch guilty of first degree murder, as well as of use of a deadly weapon to commit a felony and possession of a deadly weapon by a prohibited person, both of which Esch admitted to the jury at trial that he was guilty of

committing. Additional trial facts are set forth below as specifically relevant to Esch's assignments of error.

## III. ASSIGNMENTS OF ERROR

Esch assigns, restated, that the district court erred in its instructions to the jury on (1) the State's burden of proof and (2) intoxication and that (3) his trial counsel was ineffective for failing to object to those instructions. In addition, Esch assigns that his trial counsel was ineffective for failing to (4) object to improperly admitted evidence under Neb. Rev. Stat. § 27-404 (Cum. Supp. 2022) of Esch's prior conviction and evidence related to the harassment protection orders and move for a mistrial when that evidence was admitted, (5) adequately argue that he acted under the provocation of a sudden quarrel, (6) move for a mistrial based on improper witness testimony, (7) retain an expert to conduct a psychological evaluation of him, and (8) adequately discuss trial strategy with him.

## IV. STANDARD OF REVIEW

[1-3] Whether jury instructions are correct is a question of law, which an appellate court resolves independently of the lower court's decision.[11] All the jury instructions must be read together, and if, taken as a whole, they correctly state the law, are not misleading, and adequately cover the issues supported by the pleadings and the evidence, there is no prejudicial error necessitating reversal.[12] Failure to object to a jury instruction after it has been submitted to counsel for review precludes raising an objection on appeal absent plain error indicative of a probable miscarriage of justice.[13]

[4,5] An appellate court resolves claims of ineffective assistance of counsel on direct appeal only where the record is

---

[11] *State v. Brennauer*, 314 Neb. 782, 993 N.W.2d 305 (2023).

[12] *Id.*

[13] *State v. Erpelding*, 292 Neb. 351, 874 N.W.2d 265 (2015). See *State v. Lee*, 304 Neb. 252, 934 N.W.2d 145 (2019). Cf. *Burgo v. State*, 26 Neb. 639, 42 N.W. 701 (1889).

sufficient to conclusively determine whether trial counsel did or did not provide effective assistance and whether the defendant was or was not prejudiced by counsel's alleged deficient performance as matters of law.[14] An ineffective assistance of counsel claim will not be addressed on direct appeal if it requires an evidentiary hearing.[15]

[6,7] When reviewing an ineffective assistance of counsel claim on direct appeal, the question is whether the record affirmatively shows that the defendant's trial counsel's performance was deficient and that the deficient performance actually prejudiced the defendant's defense.[16] A court may examine performance and prejudice in any order and need not examine both prongs if a defendant fails to demonstrate either.[17]

To show deficient performance, the defendant must show that counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law.[18] To show prejudice, the defendant must demonstrate a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.[19] A reasonable probability is a probability sufficient to undermine confidence in the outcome.[20] Ultimately, "'the Constitution guarantees criminal defendants only a fair trial and a competent attorney.'"[21]

---

[14] See, *State v. Mabior*, 314 Neb. 932, 994 N.W.2d 65 (2023); *State v. Thomas*, 311 Neb. 989, 977 N.W.2d 258 (2022). See, also, *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).

[15] *Id.*

[16] See *State v. Wheeler*, 314 Neb. 282, 989 N.W.2d 728 (2023). See, also, *Strickland v. Washington, supra* note 14.

[17] *State v. Mabior, supra* note 14.

[18] See *State v. Wheeler, supra* note 16. See, also, *Strickland v. Washington, supra* note 14.

[19] *Id.*

[20] *Id.*

[21] *State v. Sanders*, 289 Neb. 335, 342, 855 N.W.2d 350, 356 (2014) (quoting *Engle v. Isaac*, 456 U.S. 107, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982)).

## V. ANALYSIS

### 1. Jury Instructions

Esch first assigns that the district court erred in its instructions to the jury on the State's burden of proof and intoxication. Relatedly, Esch also assigns that his trial counsel was ineffective for failing to object to these two instructions.

We conclude that these assignments fail because there is no plain error indicative of a probable miscarriage of justice and that his counsel was not ineffective in failing to object.

### (a) Reasonable Doubt Instruction

Esch contends that the district court's step instruction on first degree murder, second degree murder, and manslaughter resulted in plain error indicative of a probable miscarriage of justice because the court failed to properly instruct that the burden was on the State to prove beyond a reasonable doubt all the requisite elements of an offense in order to find him guilty. In addition, Esch assigns that his counsel provided ineffective assistance by failing to object to the step instruction.

The district court's step instruction stated that "[d]epending on the evidence, you may return one of several possible verdicts," which included guilty of murder in the first degree, guilty of murder in the second degree, guilty of manslaughter, or not guilty. The separate sections of the instruction for both first degree murder and second degree murder began by stating: "The elements which the State must prove beyond a reasonable doubt in order to convict [Esch of murder] are," followed by the elements of each offense. After instructing the jury on the elements of each degree of homicide, the step instruction stated the following:

> You must separately consider in the following order the crimes of Murder in the First Degree, Murder in the Second Degree, and Manslaughter. For Murder in the First Degree, you must decide whether the State proved each

element beyond a reasonable doubt. If the State did so prove each element, then you must find [Esch] guilty of Murder in the First Degree and stop. If you find that the State did not so prove, then you must proceed to consider the next crime in the list, Murder in the Second Degree. You must proceed in this fashion to consider each of the crimes in sequence until you find [Esch] guilty of one of the crimes or find him not guilty of all of them.

[8] We note that the step instruction is in accordance with the pattern instruction contained in the Nebraska Jury Instructions.[22] When there is an applicable instruction in the Nebraska Jury Instructions, the court should usually give that instruction to the jury in a criminal case.[23]

However, Esch points us to the following language included in the instructions for the two weapons offenses but not included in the step instruction: "The burden of proof is always on the State to prove beyond a reasonable doubt all of the material elements of the crime charged, and this burden never shifts." Esch asserts that because this language was included in the weapons offense instructions, when the instructions are read as a whole, the exclusion of this language from the step instruction "gives the impression" that the burden of proof did shift to Esch and "mis[led] the jury into believing that [Esch] ha[d] a burden to disprove the elements outlined in [the step instruction]."[24]

[9] We disagree that the instruction caused any confusion for the jury. We have recognized:

"[S]o long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, . . . the [U.S.] Constitution does not require that any particular form of words be used in advising the jury

---

[22] See NJI2d Crim. 3.5A.

[23] *State v. Brennauer, supra* note 11.

[24] Brief for appellant at 21.

of the government's burden of proof. . . . Rather, 'taken as a whole, the instructions [must] correctly conve[y] the concept of reasonable doubt to the jury.'"[25]

In reading the jury instructions as a whole, the instructions correctly conveyed the concept of reasonable doubt to the jury. In addition to the step instruction's unambiguous statement that "the State must prove beyond a reasonable doubt" that Esch killed his stepmother "purposely" and "with deliberate and premeditated malice," the jury received a separate instruction on the presumption of innocence, which stated: "[Esch] has pleaded not guilty. He is presumed to be innocent. That means you must find him not guilty unless and until you decide that the [S]tate has proved him guilty beyond a reasonable doubt."

[10] It is presumed that a jury followed the instructions given in arriving at its verdict, and unless it affirmatively appears to the contrary, it cannot be said that such instructions were disregarded.[26] In finding Esch guilty of first degree murder, we presume that the jury followed the instructions and found that the State proved beyond a reasonable doubt that Esch killed his stepmother purposely and with deliberate and premeditated malice.[27]

Moreover, in his closing argument, Esch's trial counsel unequivocally established that "the issue in this case is that [the State must] prove that my client[,] beyond a reasonable doubt[,] is guilty because he premeditated this murder." We observe that counsel reiterated this point numerous times in a variety of ways. We find no merit to Esch's assertion that the jury instruction misled the jury into believing that Esch bore

---

[25] *State v. Hinrichsen*, 292 Neb. 611, 630, 877 N.W.2d 211, 225 (2016) (quoting *Victor v. Nebraska*, 511 U.S. 1, 114 S. Ct. 1239, 127 L. Ed. 2d 583 (1994)) (emphasis omitted).

[26] *Missouri P. R. Co. v. Fox*, 60 Neb. 531, 83 N.W. 744 (1900), *overruled on other grounds, Callahan v. Prewitt*, 143 Neb. 787, 13 N.W.2d 660 (1944).

[27] Cf. *State v. Huff*, 282 Neb. 78, 802 N.W.2d 77 (2011).

the burden to disprove the elements of first degree murder. We conclude that there was no plain error indicative of a probable miscarriage of justice.

For the same reasons, we determine that the record is sufficient to conclusively determine that Esch was not prejudiced by his counsel's failure to object to the instructions regarding the State's burden of proof.

### (b) Intoxication Instruction

Esch also assigns that the district court erred in its instruction on intoxication, asserting the instruction resulted in plain error indicative of a probable miscarriage of justice, and that his counsel provided ineffective assistance by failing to object to the instruction. Before addressing Esch's assignments of error, we first set forth some additional background related to the intoxication instruction.

### (i) Additional Background

At trial, in addition to the witness' testimony of Esch's intoxication at the gas station set forth above, the State introduced testimony from law enforcement officers that Esch was intoxicated when he was apprehended, photographs of Esch's residence containing innumerable empty liquor bottles, and testimony of Esch's family members as to his habitual drunkenness. Esch also testified as to his history of alcohol abuse and his alcohol consumption on the date of the offense.

The State's central theory of the case was that "perceived injustices" led Esch to kill his stepmother, "something that's been brewing for years and years, truly a lifelong hatred." However, an additional component of the State's theory of the case was that Esch's intoxication decreased his inhibitions and gave him "liquid courage" or "beer muscles"; thus, his intoxication "amplified" his intent to kill his stepmother.

In contrast, part of Esch's defense theory was that his intoxication impaired his reasoning, which was relevant in two respects. First, Esch argued that many of his "stupid" behaviors

and decisions were explained by and due to his drunkenness. For example, Esch testified that had he been sober, he doubted whether he would have gone to his stepmother's house to propose buying the farmland from her, but because he was intoxicated, doing so seemed reasonable to him at the time. Second, Esch argued that the evidence showed that his intoxication caused him to act impulsively, and because he was intoxicated on the date of the offense, Esch was acting impulsively and did not consider the probable consequences of shooting his stepmother; thus, he did not kill his stepmother with deliberate and premeditated malice.

In light of the substantial evidence adduced of Esch's intoxication and in accordance with its affirmative duty,[28] the district court instructed the jury on intoxication. The instruction was given to the jury as set out below:

> There has been evidence that [Esch] was intoxicated at the time that the Murder with which he is charged was committed.
>
> Intoxication is a defense only when a person's mental abilities were so far overcome by the use of (alcohol, drugs) that (he, she) could not have had the required intent. You may consider evidence of (alcohol, drug) use along with all the other evidence in deciding whether [Esch] had the required intent.

This instruction mirrors the pattern intoxication instruction found in the Nebraska Jury Instructions.[29]

Even though, on appeal, the parties agree that the giving of the intoxication instruction was in error, neither party objected to the instruction at trial. Instead, after being provided with the instruction in advance, both parties affirmatively stated during a jury instruction conference that they had no objection to it.

---

[28] See *State v. Lamb*, 213 Neb. 498, 330 N.W.2d 462 (1983).

[29] See NJI2d Crim. 8.0. But see NJI2d Crim. 8.0, comment.

The parties also affirmatively stated that they had no objections to the court's "[d]efinitions" instruction, which defined the various terms related to the mental states of the offenses and, in particular, included a reference to intoxication in the definition of "sudden quarrel." It stated in pertinent part:

"Purposely" means intentionally.

"Intentionally" means willfully or purposely, and not accidentally or involuntarily.

"Deliberate" means not suddenly or rashly, but doing an act after first considering the probable consequences. An act is not deliberate if it is the result of sudden quarrel provocation.

"Premeditation" means forming the intent to act before acting. The time needed for premeditation may be so short as to be instantaneous provided that the intent to act is formed before the act and not simultaneously with the act.

"Malice" means intentionally doing a wrongful act without just cause or excuse.[30]

. . . .

"Sudden quarrel" means sufficient provocation which causes a reasonable person to lose normal self-control. . . . The question is whether there existed reasonable and adequate provocation . . . . The test is an objective one. Qualities peculiar to the Defendant which render him or her particularly excitable, such as intoxication, are not considered.

During his closing argument, Esch's counsel addressed these instructions in relation to the intoxication instruction:

One of the instructions that you're going to get is on intoxication. Intoxication, incidentally, is not a defense. We're not saying [Esch is] not guilty at all because he was drunk. Everybody in the world would get away with crimes if that was a legitimate defense. But what

---

[30] See NJI2d Crim. 4.0.

the instruction is, it says that there's been evidence that [Esch] was intoxicated at the time that the murder with which he's charged was committed. Intoxication is a defense only when a person's mental abilities were so far overcome by the alcohol, by the use of alcohol or drug, that he or she could not have had the required intent. You may consider evidence of the alcohol or drug use along with all the other evidence in deciding whether [Esch] had the required intent. And you know what screws up more people than alcohol in terms of their intent and their purpose in terms of what they're going to do. Alcohol, you know, and first of all we know . . . that [Esch's] father was an alcoholic. You know, it's — and it's a genetic disease. [His stepmother] and family said that [Esch is] an alcoholic. You heard the calls, you saw all the bottles, you saw the dozens of bourbon bottles and vodka bottles and lemonade bottles. There's no question. The State can't say anything to deter the fact that [Esch] drank to excess, particularly before this happened.

You know, again, alcohol is not a defense, but it's relevant. Why? Because it was part and parcel of this story because it relates to premeditation. What does alcohol do? It impairs somebody's ability to walk, or to talk, or to think. It removes somebody['s] inhibitions. It removes borders and boundaries. It clouds your judgment and impairs your ability to think clearly, to make good decisions, it fogs the brain. Doesn't that go back to premeditation, to cogitate, to deliberate, to consider, and ponder attentively? [Esch] was screwed up. . . . You can't ignore that, because you took an oath to follow the instructions. Was there premeditation? Was it — Did he deliberate? And what effect did that alcohol or drugs play on his ability to premeditate [in] this case? To meditate? Meditate takes a long time. Premeditation to think about it beforehand, and so how can you ignore the fact

that he's on drugs? Again, that's not getting him off scot-free. Please don't think that. We're just saying punish him — find him guilty for what he did do, and not for what he didn't do.

You know, alcohol, again, is not an offense [sic], but it does fog that brain. You know that the evidence is pretty unequivocal. [Counsel further reviews related evidence.] And all of that, the alcohol as well as the drugs, is relevant to premeditation.

This is a one issue case. [Has the State] proved beyond a reasonable doubt? Have they removed all the doubt about what I'm talking about now? They're relying on this motive. When you talk about, again, premeditation, deliberate, consider it to ponder, it's like I say, they don't just relate to murder, [but] what [do] they mean[. T]hey relate to what you jurors are going to have to do. How could a jury ponder and deliberate carefully, you know, if a juror is intoxicated? How is that any different? Now, you know if he [was] intoxicated or on drugs, you got your job to do. You've got to be clearheaded. If any of you were intoxicated or whatever when this case went to you, you [would] have a duty to re[c]use yourself, or we'd be excusing you, and you've violated your oath. It's deliberate. Deliberate, and it's in the language of the statutes. And that's — Don't be confused about this idea, the exception where, you know, you can form it in a second. We went through the list of what a truly first-degree murder case is. This is not one of them.

But in this case, use your examples with respect to[,] first of all, the term, deliberate, with respect to my client. And you know when — And when — Not just in terms of jurors being able to not, you have to have full senses to be able to deliberate, but you know, if my client was drunk and he came into court here to plead guilty, when somebody pleads guilty to a crime, they

have to do it knowingly, intentionally, and voluntarily. .
. . But if my client comes in and is going to plead to
the judge, [plead] guilty, and he's drunk, they're not
going to accept the plea. Why? Because it's not know-
ing, intelligent, voluntary. It's not intentional. He's not
able to understand what's going on. His faculties are
impaired, so he can't even enter [a] plea. You know, if
he's going to sign a contract and somebody knows that
you're — he's intoxicated, you can't do that, you know,
and so that's the effect [intoxication has] on people in
terms of this.

### (ii) Error in Instruction

On appeal, Esch contends that the district court's intoxica-
tion instruction is an "obvious error"[31] and that "[t]here is no
doubt"[32] that the instruction is an incorrect statement of law
because it is not in accordance with Neb. Rev. Stat. § 29-122
(Reissue 2016). The State takes a similar position and con-
tends that Esch was "not entitled to an intoxication instruc-
tion since he did not satisfy the [involuntary intoxication]
requirements of § 29-122."[33]

Section 29-122 provides:

    A person who is intoxicated is criminally responsible
    for his or her conduct. Intoxication is not a defense to any
    criminal offense and shall not be taken into consideration
    in determining the existence of a mental state that is an
    element of the criminal offense unless the [intoxication
    was involuntary].

Although the comment to the pattern instruction in the
Nebraska Jury Instructions makes mention of § 29-122, it
does not provide guidance on the statute's effect.[34] Indeed, it

---

[31] Brief for appellant at 15.

[32] *Id.* at 14.

[33] Brief for appellee at 11.

[34] See NJI2d Crim. 8.0, comment.

was not until after the most recent revision to the pattern jury instructions that we first addressed the statute.[35]

In Nebraska, it has long been recognized that "intoxication is not a justification or excuse for crime."[36] In that way, intoxication has never been a defense to a criminal offense, and intoxication has never alleviated criminal responsibility. To the extent the pattern instruction suggests otherwise, it does not comport with our longstanding precedent and is an incorrect statement of law. However, it was long held that evidence of intoxication was relevant to a jury's determination of whether a defendant had a specific intent such that a crime had been committed, or, where a crime consisting of degrees had been committed, to the jury's determination of the degree of the crime.[37] In these situations, the defendant's mental state at the time of the offense was a subjective inquiry, and evidence of intoxication was relevant to whether the State met its burden to prove an essential element of an offense.[38] The pattern instruction is also an incorrect statement of law to the extent that it fails to comport with this precedent.

[11] But in *State v. Abejide*, we held that "§ 29-122 is a 'legislative judgment regarding the circumstances under which individuals may be held criminally responsible for

---

[35] See *State v. Abejide*, 293 Neb. 687, 879 N.W.2d 684 (2016).

[36] *O'Grady v. State*, 36 Neb. 320, 321, 54 N.W. 556, 556 (1893). See, *State v. Hotz*, 281 Neb. 260, 795 N.W.2d 645 (2011); *Tvrz v. State*, 154 Neb. 641, 48 N.W.2d 761 (1951); *Hill v. State*, 42 Neb. 503, 60 N.W. 916 (1894); *Carr v. State*, 23 Neb. 749, 37 N.W. 630 (1888); *Johnson v. Phifer*, 6 Neb. 401 (1877). See, also, *State v. Brennauer, supra* note 11; *Schlencker v. The State*, 9 Neb. 241, 1 N.W. 857 (1879), *reversed on rehearing on other grounds* 9 Neb. 300, 2 N.W. 710.

[37] See *id.*

[38] See *Smith v. The State*, 4 Neb. 277 (1876). See, also, *Kennison v. State*, 80 Neb. 688, 115 N.W. 289 (1908).

their actions.'"[39] Thus, we interpreted § 29-122 as having redefined the mental state elements of all subjective criminal offenses in Nebraska to provide for an objective inquiry: whether the State proved circumstances surrounding the offense that would otherwise establish the requisite mental state "but for" the defendant's voluntary intoxication.[40]

Because the pattern instruction in the Nebraska Jury Instructions does not comport with our precedent and our interpretation of § 29-122, we expressly disapprove of its use. Yet, in Esch's case, we conclude there is no indication of a probable miscarriage of justice caused by the instruction.

Esch asserts that although, "[a]t first glance," the court's instruction

> had the potential to benefit, rather than prejudice, [Esch], after considering the jury instructions as a whole, the evidence presented at trial, and the arguments of [Esch's] counsel at trial, [it] undoubtedly confused the jury and muddied the sole issue [it] needed to decide: [Esch's] state of mind.[41]

Conversely, the State argues that the instruction was indeed "beneficial" to Esch.[42] We agree that the court's instruction was beneficial to Esch insofar as it allowed the jury to consider Esch's intoxication in its determination of whether Esch subjectively killed his stepmother with deliberate and premeditated malice.

Esch's argument of confusion regarding the court's intoxication instruction is twofold. First, Esch argues his trial counsel created ambiguity and confusion with his closing argument.

---

[39] *State v. Abejide, supra* note 35, 293 Neb. at 700, 879 N.W.2d at 695 (2016) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 116 S. Ct. 2013, 135 L. Ed. 2d 361 (1996) (Ginsburg, J., concurring in judgment)). Cf. *State v. Mueller*, 301 Neb. 778, 920 N.W.2d 424 (2018), *modified on denial of rehearing* 302 Neb. 51, 921 N.W.2d 584 (2019).

[40] See *id.*

[41] Brief for appellant at 15-16.

[42] Brief for appellee at 14.

But we decline to attribute any error to the district court solely because of the actions of Esch's trial counsel.

Esch also maintains that the jury was confused because of the reference to intoxication in the instruction defining "sudden quarrel." Undisputedly, the definition of "sudden quarrel" given to the jury is a correct statement of law.[43] Whether a defendant committed manslaughter by sudden quarrel has always been an objective inquiry in Nebraska that requires reasonable and adequate provocation,[44] and intoxication has long been recognized as inadequate provocation as a matter of law.[45] We cannot conclude that the jury was confused by the court's instructions that were consistent with our prior precedent.

Esch also contends that his trial counsel was deficient in failing to object to the district court's intoxication instruction because the jury was confused when it was "bombarded with contradictory instructions and arguments regarding the requisite intent."[46] Even assuming that Esch's counsel's closing argument is relevant to the inquiry of his counsel's deficiency in failing to object to the court's instruction, when that closing argument is reviewed in its entirety and the context of the evidence presented at trial, we find nothing causing jury confusion.

Despite some semantic differences, Esch's closing argument was given in accordance with the court's instruction. When viewing the entirety of the proceedings and recognizing that the points made in Esch's closing argument were given in response to the evidence presented at trial and the State's

---

[43] See, *State v. Dubray*, 289 Neb. 208, 854 N.W.2d 584 (2014); *State v. Smith*, 284 Neb. 636, 822 N.W.2d 401 (2012); *State v. Cave*, 240 Neb. 783, 484 N.W.2d 458 (1992).

[44] See, *State v. Pettit, supra* note 8; *Braunie v. State*, 105 Neb. 355, 180 N.W. 567 (1920); *Savary v. State*, 62 Neb. 166, 87 N.W. 34 (1901). See, also, *Lowe v. State*, 110 Neb. 325, 193 N.W. 707 (1923).

[45] See *Carr v. State, supra* note 36.

[46] Brief for appellant at 23.

closing argument, Esch's trial counsel's argument was clear and tracked the instruction given to the jury: That despite Esch's intoxication, the evidence showed beyond a reasonable doubt that Esch was guilty of manslaughter by sudden quarrel, and in light of his intoxication, the State did not prove beyond a reasonable doubt that Esch killed his stepmother with deliberate and premeditated malice. As the State succinctly states in its brief:

> [T]he record reflects that Esch's trial counsel did competently focus on Esch's intoxication level at the time of the offense, [and] while not a defense in and of itself, was relevant to whether he had the state of mind to be guilty of first degree murder, i.e., whether the offense was deliberate and premeditated.[47]

We conclude that the record shows Esch's trial counsel conclusively was not deficient in his failure to object to the instruction regarding intoxication.

### 2. REMAINING CLAIMS OF INEFFECTIVE ASSISTANCE OF COUNSEL

We now turn to Esch's remaining claims of ineffective assistance of counsel.

### (a) § 27-404 Evidence

[12-14] Esch assigns that his trial counsel was ineffective for failing to object to evidence he asserts was improperly admitted under § 27-404 and that his counsel was ineffective for failing to move for a mistrial when this evidence was introduced at trial. In a criminal case, § 27-404(1) operates as a broad exclusionary rule of relevant evidence that speaks to a criminal defendant's propensity to have committed the crime or crimes charged.[48] Meanwhile, § 27-404(2) operates as an inclusionary rule of evidence that provides that evidence that

---

[47] Brief for appellee at 15.

[48] *State v. Wheeler, supra* note 16.

raises a propensity inference is admissible for other proper purposes, including proof of motive, intent, preparation, or absence of mistake or accident.[49] While evidence is not an "other act" under § 27-404(2) when it only tends to logically prove an element of the crime charged, proof of another distinct substantive act is admissible in a criminal prosecution when there is some legal connection between the two upon which it can be said that one tends to establish the other or some essential fact in issue.[50]

[15,16] Under § 27-404(3), a proponent of evidence offered pursuant to § 27-404(2), upon objection to its admissibility, is required to state on the record the specific purpose or purposes for which the evidence is being offered, and the trial court must similarly state, on the record, the purpose or purposes for which such evidence is received.[51] In criminal cases, before the admission of such evidence, the prosecution must prove to the court, outside the presence of any jury, "'by clear and convincing evidence that the accused committed the crime, wrong, or act.'"[52] When admissible, upon a party's request, the trial court must instruct the jury as to the specific purposes for which the evidence was received.[53]

Before trial, the State filed a motion to conduct a hearing pursuant to § 27-404(3). The State sought a preliminary determination regarding the admissibility of evidence of Esch's incarceration for criminal mischief from 2012 to 2015, conversations he had with family members while incarcerated, and his 180-day incarceration for the violations of the harassment protection orders. The State asserted that it was going

---

[49] See *State v. Wheeler, supra* note 16.

[50] See *State v. Wheeler, supra* note 16.

[51] *Id.* Compare Neb. Rev. Stat. § 27-414 (Reissue 2016).

[52] *State v. Wheeler, supra* note 16, 314 Neb. at 292, 989 N.W.2d at 737 (quoting § 27-404(3)). See, also, 1993 Neb. Laws, L.B. 598.

[53] *State v. Wheeler, supra* note 16. See Neb. Rev. Stat. § 27-105 (Reissue 2016).

to offer this evidence at trial to prove Esch's motivation for the murder and that the murder was premeditated. The district court ruled that the evidence was admissible for those purposes. Although the court failed to specifically find on the record that the State proved by clear and convincing evidence that Esch committed the other acts, there is no dispute on appeal that he did so, as Esch admitted to their commission at trial.

Instead, on appeal, Esch takes issue with the fact that his counsel seemingly "was confused as to the exact nature and purpose of the [§ 27-404(3)] hearing"[54] and that he did not object to the admission of evidence of these prior bad acts at the preliminary hearing or trial. Esch contends that this evidence was not relevant to the issue of whether he killed his stepmother with deliberate and premeditated malice and that the lack of a limiting instruction "compound[ed] the prejudicial effect" of this evidence.[55] Accordingly, he asserts that "[t]he jury was left with the impression that [Esch] is a habitual lawbreaker, has a bad character, and therefore, must have gone to [his stepmother's] home with the intent of killing her."[56] Esch avers that "[t]he culmination of the admission of prejudicial evidence was prolific" and warranted a mistrial.[57]

We find no merit in Esch's assignments that his counsel was ineffective for failing to object to the admission of this evidence and move for a mistrial after the evidence was admitted. Despite Esch's contention on appeal that this evidence was not relevant to his trial, the primary factual questions before the jury were whether Esch went to his stepmother's home with the intent to kill her or whether he developed such intent after he arrived and whether it was upon a

---

[54] Brief for appellant at 24.

[55] *Id.* at 26.

[56] *Id.* at 26-27.

[57] *Id.* at 27.

sudden quarrel. The evidence was highly probative to that issue and was admissible under § 27-404. Further, although Esch now asserts on appeal that he was prejudiced by this evidence, most, if not all, evidence is intended to be prejudicial; it is only that evidence which is unduly prejudicial that is inadmissible.[58] There is nothing in the record that suggests the evidence was unduly prejudicial.

Moreover, the evidence was integral to his defense theory at trial. Esch's primary argument that he presented to the jury was that the other acts showed that he was not a person who resorted to violent behaviors and his stepmother's death was a result of a sudden quarrel due to Esch's reaction to his stepmother's treatment of his father's suicide and their tempestuous relationship in light of the prior acts. The record affirmatively shows that his trial counsel utilized the evidence sufficiently and competently in presenting Esch's case to the jury and was not ineffective for failing to object to its admission.

Even though his counsel did not request a limiting instruction, we cannot conclude that Esch's trial counsel's performance was deficient in this regard. Based on the defense's theory of the case, it is reflective of a reasonable trial strategy. Nothing in the record suggests Esch's right to a fair trial was compromised.

We conclude that the record is sufficient to conclusively determine that Esch's trial counsel's performance was neither deficient by failing to raise a § 27-404 objection to this evidence, nor deficient by failing to move for a mistrial when the evidence was presented to the jury.

### (b) Sudden Quarrel

Esch argues that his trial counsel was ineffective by inadequately arguing that he acted under the provocation of a

---

[58] *State v. Davlin*, 277 Neb. 972, 766 N.W.2d 370 (2009).

sudden quarrel. Esch asserts that his trial counsel "fail[ed] to present a coherent and legally cognizable theory of the defense."[59] His primary issue is trial counsel's focus on what he classifies as dictionary definitions of "sudden" and "quarrel" rather than the legal definition of "sudden quarrel" provided in the jury instructions. But Esch fails to show or explain how the defense was incoherent or not legally cognizable. Although Esch's appellate counsel suggests that the case should have been argued differently and that trial counsel should have focused more on the reasonableness of the provocation, trial counsel's argument displays a reasonable trial strategy.

[17] Moreover, the jury found Esch guilty of first degree murder, which required the jury to determine beyond a reasonable doubt that Esch killed his stepmother with deliberate and premeditated malice. For a killing to occur upon a sudden quarrel, the defendant must have actually lost self-control in conditions that would cause a reasonable person to lose normal self-control.[60] Deliberate and premeditated malice is incompatible with a finding that Esch lost self-control.[61] By proving that Esch killed with deliberate and premeditated malice, the State implicitly proved the absence of a sudden quarrel.[62] Accordingly, the record is sufficient to conclusively determine that Esch was not prejudiced by his trial counsel's "sudden quarrel" argument.

### (c) Mistrial

Esch contends that his counsel was ineffective for not moving for a mistrial after the following questioning of one of Esch's half sisters by the State:

---

[59] Brief for appellant at 30.

[60] See, *State v. Dubray, supra* note 43; *State v. Smith, supra* note 43; *State v. Cave, supra* note 43.

[61] See *id.*

[62] See *State v. Hinrichsen, supra* note 25.

Q So when [Esch] moved into the home place — or I'm sorry, the property that — you call it the Charlotte property —

A Yeah.

Q — when [Esch's grandmother] moved to town, he was not the owner of the property?

A No.

Q And he wasn't deeded the property?

A No.

Q Did he continue to live in that property from then until today?

A No.

Q Okay. When did — When did he stop living in that property?

A In, what was it, March, April of 2012 when he was arrested for shooting up the —

[Defense Counsel:] Objection.

A Until —

THE COURT: All right. Would you approach?

**(Sidebar held off the record.)**

THE COURT: All right. The objection is sustained. The last answer by the witness is stricken from the record and the jury is instructed to disregard that statement.

Q (By [the State]) Ma'am, Mr. Esch went to jail in 2012, is that right, in the springtime?

A Yes.

Q Okay. And is that the reason he stopped living at that property?

A Yes.

A mistrial is properly granted in a criminal case where an event occurs during the course of a trial that is of such a nature that its damaging effect cannot be removed by proper admonition or instruction to the jury and thus prevents a fair trial.[63]

---

[63] *State v. Figures*, 308 Neb. 801, 957 N.W.2d 161 (2021); *State v. Schmaltz*, 304 Neb. 74, 933 N.W.2d 435 (2019); *State v. Kibbee*, 284 Neb. 72, 815 N.W.2d 872 (2012).

Decisions regarding motions for mistrial are directed to the discretion of the trial court.[64] When attempting to prove error predicated on the failure to grant a mistrial, the defendant must prove the alleged error actually prejudiced him or her, rather than creating only the possibility of prejudice.[65]

[18] Although the testimony that Esch's criminal mischief offense involved a "shooting" may have been prejudicial to the defense, his counsel effectively objected to it, it was stricken, and the jury was immediately instructed to disregard the testimony. Error cannot ordinarily be predicated on the failure to grant a mistrial if an objection or motion to strike the improper material is sustained and the jury is admonished to disregard such material.[66] It is presumed that a jury followed the instructions given in arriving at its verdict, and unless it affirmatively appears to the contrary, it cannot be said that such instructions were disregarded.[67] Accordingly, even if his counsel was deficient for failing to move for a mistrial, Esch was not prejudiced to the level that compromises his right to a fair trial.

### (d) Unaddressed Claims Due to Insufficient Record

There is no record to conclusively determine whether Esch's counsel was deficient for failing to retain an expert to conduct a psychological evaluation on him or adequately discuss trial strategy with him, or assuming that counsel was deficient, whether Esch was or was not prejudiced by that deficiency. Therefore, we cannot address these assignments on direct appeal.

---

[64] *State v. Schmaltz, supra* note 63.

[65] See *State v. Grant*, 293 Neb. 163, 876 N.W.2d 639 (2016).

[66] *State v. Briggs*, 303 Neb. 352, 929 N.W.2d 65 (2019).

[67] See *Missouri P. R. Co. v. Fox, supra* note 26.

## VI. CONCLUSION

Upon our review of the record, we conclude that the jury instructions do not constitute plain error indicative of a probable miscarriage of justice and that, apart from the two assignments of error that our record is insufficient to resolve, Esch's trial counsel did not provide ineffective assistance. We therefore affirm.

Affirmed.

Freudenberg, J., not participating.

Miller-Lerman, J., concurring.

Although not demanded by the evidence and the appellate assignments of error, in an appropriate case, I believe the due process implications of the step instruction in a first degree murder case warrant revisiting, as elucidated in the dissent in *State v. Hinrichsen*, 292 Neb. 611, 877 N.W.2d 211 (2016) (Connolly, J., dissenting; Miller-Lerman, J., joins).